## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **vs.** | ) | **Cr. No. 05-383 (RBW)** |
| | ) | |
| **DAVID BUTLER,** | ) | |
| | ) | |
| **Defendant.** | ) | |

_____

### DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

_____On November 4, 2005, Mr. David Butler, the defendant, pled guilty to a one-count Information charging him with Wire Fraud, in violation of 18 U.S.C. § 1343.  He will appear before this Honorable Court for sentencing on March 3, 2006.   Defendant, through undersigned counsel, hereby respectfully submits this memorandum in aid of sentencing for the Court's consideration in determining a fair and just sentence.

### Background

Mr. Butler began his employment with the Smithsonian Business Ventures (SBV) in July 1998.  He worked in a variety of positions in the various retail shops within SBV.  In 2001, Mr. Butler was promoted to an area manager position in the retail operations of SBV.  Between the years of 1998 and 2002, Mr. Butler was thriving in his professional duties as an employee of SBV and his personal life.  In 1999, Mr. Butler got married and the following year his wife gave birth to their first son.  However, financial pressure began to grow in Mr. Butler's family life and he began having difficulty making ends meet.

In June 2002, Mr. Butler began accessing the refund transaction function at SBV cash register terminals to credit his personal debit card, whereby he refunded items that were not in fact returned.   The cost of child care was a driving force for Mr. Butler's actions.  In 2003, Mr.

Butler and his wife had another child whereby his wife remained out of work.  With his wife out of work and suffering from postpartum depression, Mr. Butler experienced increased financial pressure and emotional distress.  He continued to access the refund transaction function at cash register terminals to credit his personal debit card throughout this time period.  In total, over $84,000 was credited to Mr. Butler's personal debit card.

Upon confrontation by law enforcement officials, Mr. Butler candidly and explicitly admitted his criminal conduct.  Mr. Butler immediately waived his rights and gave a very detailed statement admitting his conduct, which was memorialized in a four-page document which he then signed.   In his written statement and in his discussions with law enforcement officials, Mr. Butler was extremely remorseful for his behavior and indicated that he wanted to begin making restitution payments as soon as possible.

There are no disputes to guideline calculations in this case and as the Pre-Sentence Report indicates, the applicable offense level to Mr. Butler is a base offense level of 12.  Mr. Butler has no prior criminal history, and thus his criminal history category is I, resulting in a guideline sentencing range of 10 to 16 months within Zone C of the Guidelines.  Further, in accordance with the plea agreement in this case, either party may seek a sentence outside the stipulated guideline range.  Mr. Butler submits that a downward departure under U.S.S.G. § 5K2.0 is appropriate.  In addition, the factors articulated in 18 U.S.C. § 3553 (a) also warrant a sentence outside of the stipulated guideline range.

## **ARGUMENT**

I.    **Downward Departure Arguments Under the Sentencing Guidelines**

Before a court may depart from the applicable guideline range, it must find a "mitigating

circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing

Commission in formulating the guidelines that should result in a sentence different from that

described." See 18 U.S.C. § 3553(b); accord U.S.S.G. § 5K2.0. The Supreme Court in Koon v.

United States, 116 S.Ct. 2035 (1996), stated that the "sentencing court must determine whether

the factor, as occurring in the particular circumstances, takes the case outside the heartland of the

applicable Guidelines." Id. at 2051.

The Policy Statement of U.S.S.G. § 5K2.0, Grounds for Departure, states that "an

offender characteristic or other circumstance that is, in the Commission's view, 'not ordinarily

relevant' in determining whether a sentence should be outside the applicable guidelines range

may be relevant to this determination if such characteristic or circumstance is present to an

unusual degree and distinguishes the case from the 'heartland' cases covered by the guidelines."

In addition, the Commentary to the Policy Statement of the U.S.S.G. § 5K2.0, Grounds for

Departure, states that "the Commission does not foreclose the possibility of an extraordinary

case, that because of a *combination of such characteristics or circumstances*, differs significantly

from the 'heartland' cases covered by the guidelines in a way that is important to the statutory

purposes of sentencing, even though none of the characteristics or circumstances individually

distinguishes the case." (Emphasis added). Mr. Butler's case is an extraordinary case as

contemplated by the guidelines and falls outside the heartland of cases due to a combination of

factors that include his extraordinary family responsibilities, employment history, and aberrant

behavior. Therefore, a downward departure is warranted based upon these combined factors.

In addition to the commentary of U.S.S.G. § 5K2.0 allowing for the combination of

factors to be considered at sentencing, several circuits have upheld downward departures in these

3

situations.  The Ninth Circuit held in United States v. Cook, 938 F.2d 149, 153 (9th Cir. 1991)

that  "given the Commission's acknowledgment of the 'vast range of human conduct' not

encompassed by the Guidelines, a unique combination of factors may constitute the

"circumstance" that mitigates.  The Tenth Circuit held that a "unique combination of factors,"

none of which "standing alone may have warranted departure," provided a proper basis for

departure for a career offender.  *See* United States v. Bowser, 941 F.2d 1019, 1024-25 (10th Cir.

1991).  *See also* United States v. Pena, 930 F.2d 1486, 1495-96 (10th Cir. 1991) (combination of

family responsibilities, aberrant behavior and employment history supported downward

departure).  The Eighth Circuit has also upheld downward departures based on a totality of

circumstances.  *See* United States v. Parham, 16 F.3d 844, 848 (8th Cir. 1994) ("the factors

warranting departure in a particular case do not exist in isolation...The totality of those individual

circumstances may well converge to create the unusual situation not contemplated by the

Commission.").

Importantly, numerous case in this district have recognized that a combination of factors

may warrant a downward departure from the guidelines.  *See* United States v. Dyce, 975 F.Supp.

17 (D.D.C. 1997) (downward departure warranted on grounds of extraordinary post-offense and

post-conviction rehabilitation; defendant had been law abiding, productive citizen for over four

years, defendant was rasing two sons by herself and in exemplary fashion, and all defendant's

accomplishments would be "utterly frustrated" if she were plucked out of community and

imprisoned.); United States v. Mason, 90 F.Supp.2d 1 (D.D.C. 1999) (combination of mitigating

circumstances warranted downward departure from guideline range based upon exceptional

adjustment to parole and defendant's explanation of offense); United States v. Blackwell, 897

4

F.Supp. 586 (D.D.C. 1995) (defendant had palpably diminished capacity, significant family responsibilities and her offense was clearly an act of aberrant behavior; combined justify a substantial downward departure.); United States v. Ingram, 816 F.Supp. 26 (D.D.C. 1993) (downward departure granted in light of entire circumstances of case including stable employment, negligible criminal history and defendant played a relatively minor role in the crime charged.); and United States v. Jackson, 756 F.Supp. 23 (D.D.C. 1991) (downward departure appropriate because the guidelines do not adequately take account of the ability of the trial judge to evaluate the culpability of the defendant, her similarity or dissimilarity to other people convicted for the same crime, her family responsibilities and the lack of threat she poses to the community.).

       The combination of family responsibilities, employment history, and aberrant behavior warrant a departure in this case.  Mr. Butler has two small children aged five and two.  He shares a very close relationship with his children and his wife.  All of them are dependent upon Mr. Butler for emotional and financial support, as he is the backbone of and primary provider for, his family.[1]  Mr. Butler pays the mortgage on the family home  and significant child care expenses. If he is incarcerated, Mr. Butler's family will likely lose their home and he will lose his present job with Washington Sports Club as a district manager.  In that event, Mr. Butler will be unable to begin making restitution payments, which total over $84,000, until he is released from imprisonment and obtains news employment.

       Of particular note is that Mr. Butler has no criminal record.  This crime clearly constitutes

---

       [1]  Please see the attached letters, one from Mr. Butler's wife and the other from his sister. As evidenced in these letters, Mr. Butler's presence and support for his family strongly contribute to his children's stability.

aberrant behavior on his part. According to the 2005 edition of the U.S. Sentencing Guidelines, a departure for aberrant behavior under § 5K2.20 is only applicable if the "defendant committed a single criminal occurrence or single criminal transaction that (1) was committed without significant planning; (2) was of limited duration; and (3) represents a marked deviation by the defendant from an otherwise law-abiding life." See U.S.S.G. § 5K2.20 (b). However, the 2002 edition of the U.S. Sentencing Guidelines - the year in which this conduct began - had no such requirement. Notwithstanding the differences in the Policy Statement of §5K2.20, between the 2002 edition and the 2005 edition of the U.S. Sentencing Guidelines, both editions state in the application note that there are other circumstances that the court may consider such as "the defendant's (A) mental and emotional conditions; (B) employment record; (C) record of prior good works; (D) motivation for committing the offense, and (E) efforts to mitigate the effects of the offense." See U.S.S.G. § 5K2.20, App. Note 3. Clearly, Mr. Butler's motivation for committing this offense - supporting his family which included the costs of child care - is a circumstance the court should consider. See United States v. Maese, 146 Fed. Appx. 276 (10th Cir. 2005) (district court's decision to grant eight-level downward departure for aberrant behavior was not unreasonable under pre-Booker regime; no remand necessary for district court to re-exercise discretion it now has under Booker).

    In sum, this set of circumstances - aberrant behavior, employment history, and family responsibilities - grouped together merit a downward departure because Mr. Butler's case falls outside the "heartland" of cases covered by the guidelines.

## II.    THE POST-BOOKER SENTENCING FRAMEWORK

    The United States Sentencing Guidelines, of course, are not mandatory. The Court must

only consider the Guidelines as advisory, along with the other factors set forth in 18 U.S.C. §

3553(a).  United States v. Booker, __ U.S. __, 125 S.Ct. 738, 764 (2005).  These factors include:

"The nature and circumstances of the offense and the history and characteristics of the defendant;

. . . the kinds of sentences available; . . . the need to avoid unwarranted sentence disparities

among defendants with similar records who have been found guilty of similar conduct; and . . .

the need to provide restitution to any victims of the offense."  18 U.S.C. 3553(a).  Pursuant to 18

U.S.C. § 3661,

> [n]o limitation shall be placed on the information concerning the
> background, character, and conduct of a person convicted of an
> offense which a court of the United States may receive and
> consider for the purposes of imposing an appropriate sentence.

Following Booker, the Court need not justify a sentence outside the applicable Guidelines range

by citing an applicable Guidelines grounds for departure or factors that take the case outside the

"heartland."  Rather, as long as the sentence imposed is reasonable and supported by the factors

outlined in § 3553, the Court may disagree with the range proposed by the Guidelines and

exercise discretion to impose a sentence outside the range.

After considering all of the factors set forth in § 3553(a), the Court must impose a

sentence "that reflect[s] the seriousness of the offense, promote[s] respect for the law, provide[s]

just punishment, afford[s] adequate deterrence, protect[s] the public, and effectively provide[s]

the defendant with needed educational or vocational training and medical care."  Id. at 765

(citing 18 U.S.C. § 3553(a)(2)).  Section 3582 of Title 18 provides:

> [t]he court, in determining whether to impose a sentence of
> imprisonment, and, if a term of imprisonment is to be imposed, in
> determining the length of the term, shall consider the factors set
> forth in Section 3553(a) to the extent that they are applicable,

7

recognizing that imprisonment is not an appropriate means of
promoting correction and rehabilitation.

With that limitation and considering all of the purposes of sentencing, the Court must impose a

sentence that is "sufficient, but not greater than necessary, to comply with the purposes set forth

in paragraph [(a)](2) [of § 3553]."  18 U.S.C. § 3553(a).

A review of all of the applicable factors set forth in § 3553(a) demonstrates that a

sentence below the Guideline range would be warranted in this matter, and that a sentence within

the Guideline range would be greater than necessary to meet the sentencing purposes set forth in

§ 3553(a)(2).  The Court should consider Mr. Butler's family history, work history, and lack of

criminal history, as set forth above.  Further, the Court should consider the large sum of

restitution in this case - over $84,000.00.  If Mr. Butler is incarcerated he will be unable to

provide restitution to the Smithsonian in a timely fashion - if at all.  The need to provide

restitution to the Smithsonian - the victim in this case - shall be considered by this Court pursuant

to § 3553 (a)(7) in determining an appropriate sentence for Mr. Butler.

Imposing a sentence below the Guideline range would not promote an unwarranted

sentencing disparity.  Disparities arise not only from sentencing determinations by courts, but

from charging decisions made by the government and by individuals' ability or inability to

successfully cooperate with the government.  In the District of Columbia, the United States

Attorney's Office has the unilateral ability to determine whether any particular defendant should

be charged in local court or charged in federal court.  If Mr. Butler had been charged in Superior

Court, The Superior Court of the District of Columbia Voluntary Sentencing Guidelines would

apply.  Under those guidelines, the appropriate sentencing range for a person convicted of first

degree theft with no criminal history - as is the case with Mr. Butler - would be a range of 6 to 24 months whereby either a term of prison, a short split sentence or straight probation may be imposed. Therefore, Mr. Butler would be eligible for a term of straight probation if his case had been prosecuted in Superior Court. However, because Mr. Butler's applicable guideline range is in Zone C of the Federal Sentencing Guidelines, either a sentence of imprisonment or a split sentence is applicable. Therefore, the fact that a straight probation term is not available to Mr. Butler under the Guidelines in district court demonstrates an unwarranted sentencing disparity under § 3553(a).

When considering potential disparities and the Guidelines, the Court should also consider that in 2003, the Sentencing Commission issued a policy statement, contained in U.S.S.G. §5K3.1, in which the Commission approved of a downward departure of up to 4 levels for defendants who agreed to plead guilty very early on in the proceedings. Disparities unrelated to a defendant's offense or criminal history occur based on the disparate use of this policy statement among United States Attorneys' Offices. Our district does not have such a program, while others do.

The merits of the policy statement in § 5K3.1 are readily apparent. Early dispositions conserve scarce prosecutorial and judicial resources. Section 5K3.1 implements the Sentencing Commission's desire that defendants who agree to plead early on in the proceedings receive additional dispensation. Here, Mr. Butler admitted his guilt to the investigative agents as soon as he was confronted and indicated his willingness to plead guilty very early on in the proceedings. Mr. Butler saved scarce prosecutorial and judicial resources by his early decision to cooperate with law enforcement and pled guilty in a timely fashion. Therefore, if § 5K3.1 applied in the

District of Columbia, it is likely that Mr. Butler would have received a four level reduction.  A

four level reduction in the offense level here would reduce the Guidelines range from 10 to 16

months, a guideline range in Zone C, to 0 to 6 months, a guideline range in Zone A - thereby

resulting in an opportunity to receive a term of straight probation.

Sentencing Mr. Butler to a term of probation[2] is "sufficient, but not greater than necessary

to reflect the seriousness of the offense, promote respect for the law, provide just punishment,

afford adequate deterrence, protect the public, or effectively provide Mr. Butler with needed

educational or vocational training and medical care;" while also allowing Mr. Butler to repay the

Smithsonian for his wrongdoing.  See 18 U.S.C. § 3553(a).

## Conclusion

For all of the foregoing reasons and such other reasons as may be discussed at the

sentencing hearing in this matter, Mr. Butler respectfully submits that a sentence below the

calculated guideline range of 10 to 16 months is adequate to promote the relevant sentencing

objectives at issue in this case.

_____Respectfully submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER


_____/s/_____
Dani Jahn
Assistant Federal Public Defender
625 Indiana Avenue, N.W., Suite 550
Washington, D.C.  20004
(202) 208-7500

---

[2]  If the Court is of the belief that a straight term of probation is inadequate to meet the
sentencing objectives of § 3553(a), the Court should consider sentencing Mr. Butler to a term of
home detention as a special condition of his probation.

10